UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NO. 19-1763


UNITED STATES OF AMERICA,
Appellee,

v.

WALLY IRIZARRY-SISCO
Defendant-Appellant.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
HONORABLE PEDRO A. DELGADO, JUDGE, PRESIDING


APPELLANT WALLY IRIZARRY-SISCO's OPENING BRIEF


Michael C. Bourbeau, Bar # 13905
Bourbeau & Bonilla, LLP
80 Washington Street, Building K
Boston, MA 02l09
(617) 350-6565

Attorney for Appellant
WALLY IRIZARRY-SISCO

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . .    ii

Statement of Jurisdiction . . . . . . . . . . . . . .    1

Issues Presented . . . . . . . . . . . . . . . . . .    1

Statement of the Case . . . . . . . . . . . . . . .    2

Statement of Facts . . . . . . . . . . . . . . . . .    3

Summary of Argument . . . . . . . . . . . . . . . .    10

<u>Argument</u>

## I. WHETHER THE TRIAL MADE ERRONEOUS EVIDENTIARY RULINGS SO PREJUDICIAL SO AS TO VIOLATE DEFENDANT'S FUNDAMENTAL FIFTH AMENDMENT RIGHT TO DUE PROCESS AND A FAIR TRIAL?

I A. Standard of Review                                 11

## II. WHETHER THE TRIAL COURT ERRED AT SENTENCING BY CONSIDERING ACQUITTED CONDUCT AND IMPOSING A SENTENCE THAT WAS NOT REASONABLE?

II A. Standard of Review                                19

Conclusion                                              25

ADDENDUM INDEX                                          26

Certification re: Rule 32 . . . . . . . . . . . . .     xx

Certificate of Service . . . . . . . . . . . . . .      xx

# Table of Authorities

| Cases | Page |
|---|---|
| *Apprendi v. New Jersey*, 530 U.S. 466 (2000) | 12,20,21 |
| *Batson v. Kentucky*, 476 U.S. 79 (1986) | 21 |
| *Bachman v. Leapley*, 953 F.2d 440 (8th Cir. 1992) | 18 |
| *Blakely v. Washington*, 542 U.S. 296 (2004) | 21 |
| *Coffin v. United States*, 156 U.S. 432 (1895) | 21 |
| *Coningford v. Rhode Island*, 640 F.3d 478 (1st Cir.), cert. denied, | |
|     132 S. Ct. 426 (2011) | 12 |
| *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, | |
|     69 L. Ed. 2d 445 (2007) | 19 |
| *Graham v. United States*, 461 U.S. 947, 103 S.Ct. 2128, | |
|     77 L.Ed.2d 1306 (1983) | 15 |
| *In re Winship*, 397 U.S. 358 (1970) | 22 |
| *Islamic Inv. Co. of the Gulf (Bah.) Ltd. v. Harper (In re Grand Jury* | |
|     *Investigation)*, 545 F.3d 21 (1st Cir.2008) | 23 |
| *Kater v. Maloney*, 459 F.3d 56 (1st Cir. 2006) | 12 |
| *Nelson v. Colorado*, 137 S. Ct. 1249 (2017) | 21 |
| *Toye v. O'Donnell* (In re O'Donnell), 728 F.3d 41 (1st Cir. 2013) | 23 |
| *United States v. Alcantara*, 837 F.3d 102 (1st Cir. 2016) | 11 |
| *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, | |
|     160 L.Ed.2d 621 (2005) | 20 |
| *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, | |
|     152 L.Ed.2d 860 (2002) | 12 |
| *United States v. Candelaria-Silva*, 714 F.3d 651(1st Cir. 2013) | 19 |
| *United States v. Conley*, 156 F.3d 78 (1st Cir. 1998) | 19 |
| *United v. Ellis*, 935 F.2d 385 (1st Cir. 1991) | 15 |
| *United States v. Gaudin*, 515 U.S. 506 (1995) | 21 |
| *United States v. Gemma*, 818 F.3d 23 (1st Cir. 2016) | 11 |
| *United States v. Gobbi*, 471 F.3d 302 (1st Cir. 2006) | 20 |
| *United States v. Harakaly*, 734 F.3d 88 (1st Cir. 2013) | 12 |
| *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) | 19 |
| *United States v. Morris*, 700 F.2d 427 (1st Cir. 1983) | 15 |
| *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) | 19 |
| *United States v. Shay*, 57 F.3d 126 (1st Cir. 1995) | 18 |
| *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, | |
|     136 L.Ed.2d 554 (1997) | 20 |
| *Washington v. Recuenco*, 548 U.S. 212, 126 S.Ct. 2546, | |
|     165 L.Ed.2d 466 (2006) | 12 |

## Constitution, Statutes and Rules

| | Page |
|---|---|
| U.S. Const. Fifth Amendment | 20,21 |
| U.S. Const. Sixth Amendment | 20,21 |
| | |
| 18 U.S.C. § 2423(a) | 1 |
| 18 U.S.C. § 3231 | 1 |
| 18 U.S.C. § 3553(a) | 22 |
| 18 U.S.C. § 3582(c)(2) | 1 |
| 28 U.S.C. § 1291. | 1 |
| | |
| F.R.Cr.P. Rule 29 | 2 |
| | |
| F.R.E. 701 | |
| F.R.E. 803(2) | 12-15 |
| F.R.E. 803(3) | 14 |
| F.R.E. 803(4) | 15 |

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from the judgment of the United States District Court of Puerto Rico, entered on July 17, 2019 sentencing Mr. IRRIZARY-SISCO to a total term of 235 months. Addendum at 1. The district court had original jurisdiction over this criminal action pursuant to 18 U.S.C. § 3231, and 18 U.S.C. § 3582(c)(2).

Notice of appeal was timely filed on July 19, 2019. Appendix (App.) at 471. Jurisdiction now lies with this Honorable Court pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    WHETHER THE TRIAL MADE ERRONEOUS EVIDENTIARY RULINGS SO PREJUDICIAL SO AS TO VIOLATE DEFENDANT'S FUNDAMENTAL FIFTH AMENDMENT RIGHT TO DUE PROCESS AND A FAIR TRIAL?

II.   WHETHER THE TRIAL COURT ERRED AT SENTENCING BY CONSIDERING ACQUITTED CONDUCT AND IN IMPOSING A SENTENCE THAT WAS NOT REASONABLE?

## STATEMENT OF THE CASE

Appellant WALLY IRIZARRY-SISCO  was charged in a Three Count Indictment charging violations of 18 U.S.C. § 2423(a), Transportation of a

1

Minor with Intent to Engage in Sexual Activity, App. at 29.  On May 22, 2017, the Government moved to dismiss Count Three, Dkt. 120,122, App. at 14.

Mr. IRIZARRY-SISCO went to trial in October 2018 and, after a four day jury trial, he was found guilty of Count One and not guilty of Count Two.

F.R.Cr.P. Rule 29 motions were denied both at the close of the government's case and the conclusion of trial. App. at 361.

Appellant, in this appeal, challenges two of the trial court's evidentiary rulings.  The first is hearsay testimony concerning the alleged victim's response to questioning from a neighbor, questioning which raised the issue of whether Mr. IRIZARRY-SISCO had sexually assaulted the minor before the minor had made any allegations.  The second issue concerns the admission of lay opinion testimony from a neighbor that Appellant had sexually "harmed" the alleged victim. These evidentiary rulings were not harmless given the minor's credibility questions and the jury's acquittal on Count II.   Appellant also challenges the sentence imposed because not only did the trial court consider acquitted conduct, the sentence imposed was unreasonable.

STATEMENT OF FACTS

Wally IRIZARRY-SISCO is a 64 year old man, friend and co-worker with Jose Rivera, the father of he alleged victim, Minor "Y." Jose Rivera did not testify at trial.

Minor "Y"[1] testified via closed circuit television. She was fifteen years old at time of trial and identified Mr. IRIZARRY-SISCO as someone she had known since she was seven years old as a friend of her fathers, App at 213. She would see him daily at her house as well as go to his house with her family. Mr. IRIZARRY-SISCO was like a grandfather to her. He would buy her gifts such as a tablet and a volleyball, App. at 218. She would also go alone with Mr. IRIZARRY-CISCO in his truck to buy things with the permission of her father. App. at 223.

Minor Y testified that in March or April 2015 Mr. IRIZARRY-SISCO took her to two hotels. The first was when they were on the way to Walmart and Mr. IRIZARRY-SISCO told her to "Put your seat back so that they don't see you because you're a minor." App. at 226. He then drove into a garage, got out and paid a man, then took her into a room with a bed and a tv. Mr.

_____

[1] Minor Y's name was un-redacted in the trial transcript. She testified on October 11, 2018, and October 16, 2018, App at 211.

IRIZARRY-SISCO turned on the tv and there was pornography on it. App at 228. He next took all his clothes off. Minor Y went into the bathroom "to not see that" and while she was in the bathroom, she told Mr. IRIZARRY-SISCO to get dressed. When she came out he put his clothes back on. And when they went to leave he touched her by her "woo." Mr. IRIZARRY-CISCO then took her home. After she got home she didn't tell anyone about going to the hotel or what had happened. App. at 228-31.

According to Minor Y, Mr. IRIZARRY-SISCO came back to her house about a week later and spoke with her father. She testified that she was afraid to tell her parents what had happened. She further indicated that, Mr. IRIZARRY-SISCO, once again, asked her to go out and that she went with Mr. IRIZARRY-SISCO even though she didn't want to go. They then left and went to the boardwalk followed by a hotel. The hotel had dolphins in front, App. at 237.[2]

Minor Y testified that they went into the hotel carport, Mr. IRIZARRY-SISCO paid a man, closed the door and they went into a room. Mr. IRIZARRY-SISCO told her to take her clothes off and he then got on top of

---

[2] Later referred to as the "second hotel," and pictures were introduced. App. at 247. The jury acquitted Mr. IRIZARRY-SISCO of this charged offense, Count Two of the Indictment.

her. She further testified that Mr. IRIZARRY-SISCO had taken off his clothes. "[H]e was kissing my breasts. And then he unbuttoned my pants, and he passed his penis through my vagina...[a]nd then he passed it through my ass." Mr. IRIZARRY-SISCO then put his sperm on her vagina. App. at 239.

Minor Y testified that she washed up and asked to leave. Mr. IRIZARRY-SISCO wanted to stay longer and stated "why would I make him spend that money, waste that money, if we weren't going to do anything" to which Minor Y replied that she "didn't want to come here." App. at 239. After they left he took her home. Minor Y did not tell her parents what had happened. App. at 253.

About a week after that reported event, Minor Y was at her Aunt Wanda's house and heard a truck that she believed was Mr. IRIZARRY-SISCO. She "got nervous" and "started to cry." Wanda is her neighbor. Although she didn't want to tell, Wanda kept "asked [her] again and again and again." When she started to tell Wanda what had happened, Wanda called Minor Y's parents who came to the house. She left with her parents to her house and her father wanted to call Mr. IRIZARRY-SISCO who came to the house. App. At 254-55.

Sarah Mercado-Alicea was Minor Y's maternal aunt. She testified that her sister, Carmen Maria Mercado-Alicea, Minor Y's mother, had four children, from ages 15-26. Only the two youngest, including Minor Y, were born to Jose Rivera. App. At 36-38. She would visit her sister often on Saturdays and Sundays and one Saturday she met Mr. IRIZARRY-SISCO who was a friend of Jose Rivera . According to Ms. Mercado-Alicea, Mr. IRIZARRY-SISCO asked Jose if he could take out Minor Y, who was 11 at the time. Although the mother and she said no, Jose approved and the girl, got dressed and  went out to Mr. IRIZARRY-SISCO's truck. App. at 51-52. Ms. Mercado-Alicea would herself take Minor Y's sisters shopping but was never allowed to take Minor Y shopping. App. at 75.

Ms. Mercado-Alicea came to the house a second time when Minor Y was not there, and she learned the Minor Y was out with Mr. IRIZARRY-SISCO. At about 4:00-4:30 Minor Y returned in Mr. IRIZARRY-SISCO's truck and gave her father a kiss. Minor Y told her mom that her ass hurts. Ms. Mercado-Alicea was allowed to testify, over objection, that she told the minor "be careful the old man has not done anything to you," to which Minor Y "smiled." Ms. Mercado-Alicea was further allowed to testify that she "interpreted" that the girl's expressions meant that "meant that the old man had hurt her."  App.

at 61-62. On another occasion she also observed Minor Y at the minor's paternal grandfather's house which was near her home. Mr. IRIZARRY-SISCO had bought her ice cream and Minor Y left with him in his truck. She only saw Mr. IRIZARRY-SISCO on three occasions. App. at 67. She admitted that she didn't report what she saw to any police or social service agency because she didn't know for sure that something bad happened. App. at 77.

A neighbor of Carmen Mercado-Alicea and Jose Rivera for 15 years, Wanda Pagan-Colon, testified that she knows Mr. IRIZARRY-SISCO and would see him daily. App.at 115. She testified that she was like an aunt to Carmen and Jose's children. Id.

Ms. Pagan-Colon indicated that she only saw Mr. IRIZARRY-SISCO driving the truck, a grey Vitara. One day Minor Y and her older sister, Adimaris, came over to her house. She observed Minor Y get "nervous" when she heard the sound of a truck. When asked why she was nervous, Minor Y reported that her mother Carmen does not want "Old Man Wally at the house." When Ms. Pagan-Colon asked Minor Y directly if Wally had done anything to her Minor Y replied "Yes Ti-Ti." These questions of inquiry were objected to as hearsay but the objection was over-ruled. Ms. Pagan-Colon

asked Minor Y, again over objection,[3] "what he has between his legs, did he put it in your woo-woo," and, according to Ms. Pagan-Colon, Minor Y replied to that inquest: "Yes Ti-Ti." Minor Y's older sister, Adimaris was also present during this inquiry. App. at 103- 104. Adimaris did not testify.

Ms. Pagan-Colon, thereafter, called Minor Y's parents, Jose and Carmen who came over to her house within 15 minutes. She told Jose that Wally had abused Minor Y and Jose punched the wall. Jose and Carmen went in to the bedroom to talk to Minor Y and Adimaris. When Jose comes out of the bedroom she sees Wally in his truck in front of Jose's house. Jose goes to speak with him and when he returned they all left. App at 105-108. Neither Minor Y's mother or father testified.

A sister of Minor Y, Ms. Marimar Rivera-Mercado, who was 20 years old, testified that she knew Mr. IRIZARRY-SISCO as long as she could remember. Her father worked for Wally and they were friends. There was a time when they broke apart but when her father bought a farm in 2012 they reconnected. She considered him like an uncle. App. at 106. As to Minor Y, "he treated her with preference, meaning he would give her gifts, that he

---

[3] The government later explained that the statements were being admitted as an exited utterance, F.R.E. 803(2), App. at 111.

would treat her different from the rest." App. at 191. Her mother and father were present when Mr. IRIZARRY-SISCO bought Minor Y a tablet from Amazon. App. at 195.

The manager of the Eden hotel, Adolfo Reyes-Reyes testified that the license number of individuals coming to the hotel are taken down. He identified a sheet which is the hotel registry for the client with the room number, the invoice and the license plate on March 22, 2015. The customer's name is not recorded. App. at 133. He also identified photographs of the location. The person who wrote up the registry that day was a woman, Lillian Pomales. App at 152.[4]

Mr. IRIZARRY-SISCO's daughter, Laila Suleika Irizarry-Torres. was called by the defense and testified that  Minor Y's dad, Jose Rivera was a customer or employee of her father. They were friends and she knew him for over 20 years.  Her father had a grey Vitara and a white pickup. Jose would drive her father's cars. Her father was a diabetic and did not see well at night. She would see Jose drive her father's cars two or three times a week. App. at 335-36.

---

[4] Minor Y testified that it was a man, not a woman, who was paid at the hotel. Again, Appellant was acquitted of this Count.

Deryn Mary Strange also testified, called as a witness by the defense. Ms. Strange is a Professor in Psychology at John Jay College. Her research is "under the umbrella of memory errors, the kinds of mistakes we can make about our memory, and that applies to children and adults." App. at 341. Professor Strange explained how memory works and how someone may "tell us something that didn't happen, and that will become a part of our memory as well. So now we've introduced error into our memory.... And because we're so suggestible, we can't necessarily tell where all of the different details came from, and that's because of a source-monitoring error." ... "False memories, distorted memories, can feel and sound and have as much emotion as our true memories." App. at 350." She testified about the science, but did not interview Minor Y. App. at 356.

## SUMMARY OF THE ARGUMENT

Mr. IRIZARRY-SISCO's fundamental  Fifth Amendment right to due process and a fair trial was violated when the district court admitted, over objection, the "interpretations" of Minor Y's maternal aunt that Minor Y's complaint that her "ass hurt" after being with Mr. IRIZARRY-SISCO meant that "the old man had hurt her." Said unsupported lay opinion did not fall

within any rule of evidence admissibility. Equally, the trial court's allowance of a neighbor's report of her interrogation of Minor Y concerning yet unreported allegations of sexual assault by Appellant, and the child's purported hearsay responses thereto, were not an "excited utterance," and were so prejudicial as to violate Mr. IRIZARRY-SISCO's right to due process.

The District court further violated Mr. IRRIZARY-SICO's Fifth and Sixth Amendment Rights to Due Process and a trial by jury when it considered acquitted conduct at sentencing. By doing such, the ultimate sentence imposed was more than necessary to carry out the goals of sentencing and was thus, unreasonable.

## ARGUMENT

I. WHETHER THE TRIAL MADE ERRONEOUS EVIDENTIARY RULINGS THAT WERE SO PREJUDICIAL SO AS TO VIOLATE DEFENDANT'S FUNDAMENTAL FIFTH AMENDMENT RIGHT TO DUE PROCESS AND A FAIR TRIAL?

<u>Standard of Review</u>

The First Circuit reviews a district court's evidentiary rulings which have been preserved for abuse of discretion. See <u>United States v. Gemma</u>, 818 F.3d 23, 35 (1st Cir. 2016). <u>United States v. Alcantara</u>, 837 F.3d 102, 109 (1st Cir. 2016). If the erroneous admission of evidence raises a constitutional issue, such

constitutional errors, "are subject to harmless-error review; only in rare cases will they be deemed structural errors that would always require reversal. See, e.g., Washington v. Recuenco, 548 U.S. 212, 222, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (holding that preserved Apprendi/Blakely error is not structural and is subject to harmless-error review); United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). United States v. Harakaly, 734 F.3d 88, 94-95 (1st Cir. 2013). The First Circuit has also acknowledged that "a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process." Cf. Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir.), cert. denied, 132 S. Ct. 426 (2011); see also Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006).

Discussion

Appellant submits that the trial court made two erroneous evidentiary rulings during trial, both of which were preserved. One ruling allowed hearsay evidence from a neighbor concerning purported statements of Minor Y that were admitted under the guise of an "excited utterance," F.R.E. 803(2). The second error concerns lay opinion testimony from Minor Y's maternal aunt that she "interpreted" the girl's expressions to "mean that the old man [Mr. IRIZARRY-SISCO] had hurt her." App. at 62. Both of these rulings were

extremely prejudicial and had the strong likelihood of influencing the jury in its decision to convict on Count I.

Excited Utterance, F.R.E. 803(2)

The instant case rose or fell on the testimony of Minor Y who only reported the alleged Mann Act violations after interrogation from her neighbor, Wanda Pagan-Colon.  On one afternoon while visiting Ms. Pagan-Calon with her sister, Ms. Pagan-Colon reported that she observed Minor Y to appear "nervous."   At the time a truck was heard outside. When Ms. Pagan-Colon asked why Minor Y was nervous, Minor Y simply reported to Ms. Pagan-Colon that her mother, Carmen, does not want "Old Man Wally at the house." When asked what happened, Minor Y replied "nothing." App at 101.  Ms. Pagon-Colon, without any further statement from Minor Y about her relationship with Mr. IRIZARRY-SISCO,  continued to question Minor Y and directly accused Mr. IRIZARRY-SISCO of doing harm to Minor Y. [5]  Only

---

[5] The exchange went as follows:
WITNESS: I asked her if he had done something to her.
MS. IRIZARRY: Objection, hearsay.
THE COURT: Overruled.
WITNESS: And she says: No, Ti-Ti; no, Ti-Ti.
And I asked her: Are you sure; why are you getting like this; why are you nervous? So I insist, and I asked her. I asked her: Yanira, did he do anything to you?
MS. IRIZARRY: Objection, hearsay.
THE COURT: Overruled.
.

after Ms. Pagon-Colon's insistence for answers did Minor Y reportedly agree. Ms. Pagon-Colon directed questions to Minor Y concerning sexual acts before it was even raised by the minor. She continued to interrogate the minor as to those alleged acts. App. at 102-104. Appellant objected to the statements made by the minor, and the purported observations of demeanor, being admitted as evidence, but each of those objections were overruled. App at 99-104. It was only following a break in the testimony that the government explained that the statements were being offered as an "excited utterance" pursuant to F.R.E. 803(2). App at 111. The trial court agreed that " In my mind, I had 803(2) and 803(3)."[6]

The hearsay statements made by Minor Y were not, however, the product of an exciting event, nor do the statements describe a particular event. Rather, the reported statements were those that were made in response to interrogation by the minor's aunt, interrogation that made the accusation. The subject matter of the interrogation was planted in the mind of the minor; the

---

[6] FRE 803(2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.
    (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), *but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.*(emphasis added).

statements were not the product of the minor's own reporting. Further, even the statements as reported, did not relate to a particular event, but something that allegedly occurred at some unknown time with Mr. IRIZARRY-SISCO.

In United v. Ellis, 935 F.2d 385, 392-93 (1st Cir. 1991) the First Circuit addressed whether a mother's questioning of a minor over alleged sexual abuse was properly admitted as an excited utterance, F.R.E. 803(2) or statements made for purposes of medical diagnosis or treatment, F.R.E. 803(4), and decided not to decide that issue. In doing so, the Court mused that: "Prosecution of the crime of sexual abuse of a child poses special evidentiary problems. The traditional hearsay exceptions are not drafted with child sex abuse prosecutions in mind," Id, citations omitted. The Ellis Court went on to say: "[i]f its admission constituted error, the error was harmless, [citing] United States v. Morris, 700 F.2d 427, 431 (1st Cir.), cert. denied sub nom., Graham v. United States, 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983), finding that the evidence there was "cumulative." Id, emphasis added. (There, not only did the alleged victim testify and was cross examined as to the statements, the defendant made admissions in a letter to engaging in sexual activities that was considered by the jury).

The instant case is, however, factually inapposite to the Ellis case and any error of admission of the hearsay statements from Minor Y was not harmless. Although Minor Y testified in this case, App. at 211-279, to two specific instances which gave rise to the charges in the Indictment, the jury completely rejected the testimony concerning one such allegation in that they acquitted Mr. IZZARRY-SISCO as to Count II. Whether such acquittal was based on the minor's inconsistencies, or compromise, or some other reason, one can not know. Importantly, at no time did Mr. IRIZARRY-SISCO make any admissions of the alleged activity; rather, he professed his innocence throughout. The admission of the neighbor's testimony, which was admitted without limitation as to its use as substantive evidence,[7] likely influenced the juries decision to convict on Count One.

---

[7] Massachusetts allows "first complaint" testimony from minors making sexual abuse claims for the purpose of "corroborating evidence" but not for substantive purposes. See: Commonwealth v. King, 445 Mass. 217, 248 (2005), MA Sup. Ct. Instruction 3.660 (2017) *in part*: "You may consider this evidence only for specific limited purposes: first, to establish the circumstances in which the complainant first reported the alleged offense, and then to determine whether that first complaint either supports or fails to support the complainant's own testimony about the crime. You may not consider this testimony as evidence that the assault in fact occurred..."

The second significant, and also highly prejudicial evidentiary ruling, occurred during the testimony of the minor's maternal aunt, Sarah Mercado-Alicea. Ms. Mercado-Alicea testified that she was present when Mr. IRIZARRY-SISCO had dropped Minor Y off at her home in his truck, and when Minor Y came in she told her mother that her "ass hurts." Ms. Mercado-Alecea was allowed to testify, over objection, that after the minor told her mother that her "ass hurts" that she told the minor "be careful the old man has not done anything to you," to which Minor Y shrugged her shoulders and "smiled very sad sort of smile."  She was allowed to express the opinion that she believed that Mr. IRIZARRY-SISCO had "harmed" Minor Y, App. 60-62. Specifically, Ms. Mercado-Alicea was allowed to testify that she "interpreted" the girl's expressions to mean "that the old man had hurt her." App. at 61-62.

While F.R.E. 701 allows a lay person to testify to information: '(a) rationally based on the witness's perception; [and] (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue," it does not permit opinion testimony as to an ultimate fact (i.e. whether Minor Y was harmed by Mr. IRIZARRY-SISCO) that is decision exclusively within the

province of the jury. As this Court has made abundantly clear, no witness can testify as to the believability of a witness or the ultimate facts. <u>See e.g</u> "<u>Bachman v. Leapley</u>, 953 F.2d 440, 441 (8th Cir. 1992) ("It is the exclusive province of the jury to determine the believability of the witness . . . [a]n expert is not permitted to offer an opinion as to the believability or truthfulness of a victim's story." <u>United States v. Shay</u>, 57 F.3d 126, 131 (1st Cir. 1995).

    Prior to the interrogation by the neighbor, or the allegation by the aunt, Minor Y's relationship with Mr. IRIZARRY-SISCO, who was treated like a grandfather,  was no different than the aunt's relationship with Minor Y's sisters. He was a close family friend, treated as an uncle, or a grandfather, who simply took one of the children shopping. Professor Deryn Mary Strange, PHD explained how memory works and how someone may "tell us something that didn't happen, and that will become a part of our memory as well. So now we've introduced error into our memory..." App. at 347-348.

Neither evidentiary ruling was harmless, because each of the rulings allowed testimony which was used to bolster the credibility of the minor, credibility that the jury obviously had concerns with since they acquitted on Count Two.

## II. WHETHER THE TRIAL COURT ERRED IN SENTENCING BY THE CONSIDERATION OF ACQUITTED CONDUCT AND BY IMPOSING A SENTENCE THAT WAS UNREASONABLE?

Standard of Review

In that this argument presents a legal question concerning the trial court's interpretation and application of a statute or rule, the court's review is plenary. United States v. Conley, 156 F.3d 78, 82 (1st Cir. 1998).

The Court of Appeals reviews the reasonableness of a sentence, whether inside or outside the guidelines range, "under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). There are two parts to this inquiry. First, the Court considers whether the district court committed a procedural error in selecting a sentence, id. at 51. Next, the Court examines the substantive reasonableness of the sentence. See United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). "When conducting this review, . . . [we] take into account the totality of the circumstances, including the extent of any variance from the Guidelines' range." Gall, 552 U.S. at 51. See United States v. Prosperi, 686 F.3d 32, 42 (1st Cir. 2012).

The court also reviews the trial court's factual findings, for clear error, See United States v. Candelaria-Silva, 714 F.3d 651, 656 (1st Cir. 2013).

Discussion

U.S. Probation's Pre-sentence Report, calculated the advisory U.S. Sentencing Guidelines as a total offense level of 43 which included a 5 level increase for engaging in a "pattern of activity." Supplemental Appendix at 17, para. 53. Appellant objected to said calculation, App. at 421. Supp. App., but the trial court adopted probation's calculations. App. at 434-35.


A. The Constitutional Issue

Mr. IRIZARRY -SISCO is mindful that the First Circuit, as well as other courts of appeals with criminal jurisdiction, have recognized, even after Booker,[8] that a district court may consider acquitted conduct for sentencing purposes. See United States v. Gobbi, 471 F.3d 302, 313-314 (1st Cir. 2006).

The issue is not without legal controversy. United States v. Watts, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) addressed only the Double Jeopardy Clause, not the Due Process Clause or the Sixth Amendment. The Fifth and Sixth Amendments "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" Apprendi

---

[8] United States v. Booker, 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

v. New Jersey, 530 U.S. 466, 477 (2000)(quoting United States v. Gaudin, 515 U.S. 506, 510 (1995).

The Sixth Amendment guarantee of trial by jury is a constitutional protection "of surpassing importance." Apprendi, 530 U.S. at 476-77. A jury "has occupied a central position in our system of justice by safeguarding a person accused of a crime against the arbitrary exercise of power by prosecutor or judge." Batson v. Kentucky, 476 U.S. 79, 86 (1986). The Supreme Court has emphasized that a right to a jury trial is "no mere procedural formality, but a fundamental reservation of power in our constitutional structure" Blakely v. Washington, 542 U.S. 296, 306 (2004) "Apprendi carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict. Without that restriction, the jury would not exercise the control that the Framers intended." Id.

Likewise, the Fifth Amendment guarantee of Due Process provides everyone with the "[a]xiomatic and elementary"presumption of innocence that "lies at the foundation of our criminal law." Nelson v. Colorado, 137 S. Ct. 1249, 1255-56 (2017) (quoting Coffin v. United States, 156 U.S. 432, 453 (1895)). It likewise "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The government's burden to prove guilt beyond a reasonable doubt is "bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." In re Winship, 397 U.S. at 372 (Harlan, J., concurring).

While judges have historically had discretion to impose a sentence based on additional facts found by a preponderance of the evidence, that discretion should not extend to factual findings that conflict with a jury's acquittal.

B. The Reasonableness of the Sentence Imposed.

U.S. Probation in the Pre-Sentence Report suggested to trial court that there were a number of significant factors that the court could consider when imposing a sentence that is a departure from, or in variance with, the guidelines taking into account other 18 U.S.C. § 3553(a) factors.  Specifically, Probation noted that Appellant was then 63 years of age with significant medical issues. Probation also noted that the court could consider that some of Appellant's conditions were "life threatening if not properly managed, [and whether] the BOP has the capacity to manage the [Appellant's] medical conditions.

Given the identification of these sentencing factors, it is no wonder that the trial court gave a limited departure from the advisory guideline life recommendation that included enhancement for acquitted conduct. Despite that departure, a nearly twenty year sentence (235 months) for a 63 year old with a number of life threatening conditions was not substantively reasonable given that the sentence imposed was likely a life sentence anyway. A nineteen year, elevan month sentence, which is very likely to amount to a life sentence for someone in Appellant's condition, was considerably "more than necessary" to carry out all the goals of sentencing.

The unreasonableness of the near twenty year sentence is exemplified by the error in the trial court's consideration of the acquitted conduct. If the jury did not find those facts, then Appellant respectfully suggests that it is "clear error" for the trial court to flat out reject the jury's findings and exercise its own opinion of the evidence; the finding of one versus the unanimous finding of twelve. While the First Circuit has held that "to find clear error, a finding must hit us as more than probably wrong—it must prompt 'a strong, unyielding belief, based on the whole of the record,' that the judge made a mistake, Toye v. O'Donnell (In re O'Donnell), 728 F.3d 41, 45 (1st Cir. 2013) citing Islamic Inv. Co. of the Gulf (Bah.) Ltd. v. Harper (In re Grand Jury

<u>Investigation</u>), 545 F.3d 21, 24 (1st Cir.2008), the fact that a twelve person jury rejected the same finding later made by the trial court should lead this Honorable Court to do the same.

If this Honorable Court was to reject the factual finding that was made by the trial court,  that Appellant had committed a "pattern of activity," <u>see</u> Supp. App. at 17, paragraph 53, the difference of the advisory guideline range between Probation's calculation, level 43 (life),  and level 38 (235-293 months) which would have been the finding without said enhancement, is a significant starting point prior to any variance that the trial court intended to impose. Therefore, while the trial court's ultimate sentence imposed on Mr. IRIZARRY-SISCO, 235 months, which was a five level reduction from Probation's calculations,[9] if the trial court had granted that same five level reduction from level 38, the guideline level without the use of the acquitted conduct, the advisory sentence would have been 135-168 months based on an advisory level of 33.   That sentence would have been more reasonable, and sufficient but not more than necessary.

---

[9] The trial court discussed a number of 3553(a) factors, including his age and health conditions, in support of the variance. App. at 461.

## CONCLUSION

WHEREFORE, for each of the foregoing reasons, Mr. IRIZARRY-SISCO respectfully requests that the judgment be vacated and the case be remanded.

Date: April 22, 2020    Respectfully submitted:

Bourbeau & Bonilla, LLP

*S/ Michael C. Bourbeau*
Michael C. Bourbeau
Attorney for Appellant
WALLY IRIZARRY-SISCO

# ADDENDUM

Page

1. Judgment            1

1

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Wally Irizarry-Sisco (1) | Case Number:  3:15-CR-00391-01(PAD) |
| | USM Number:  45673-069 |
| | AFPD Yasmin Irizarry |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☑ was found guilty on count(s)   One (1) of the Indictment on 10/23/2018.
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:2423 | Transportation of a minor with the intent to engage in any sexual activity. | 06/03/2015 | 1 |
| | | | |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has been found not guilty on count(s)   Two (2) of the Indictment on 10/23/2018.

☑ Count(s)   Three (3)   ☑ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

7/17/2019
Date of Imposition of Judgment

S/  Pedro A. Delgado-Hernandez
Signature of Judge

Pedro A. Delgado-Hernandez   U.S. District Judge
Name and Title of Judge

7/17/2019
Date

ADDENDUM 1

2
AO 245B (Rev. 11/16)   Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  2  of  7

DEFENDANT:  Wally Irizarry-Sisco (1)
CASE NUMBER:  3:15-CR-00391-01(PAD)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Two hundred and thirty-five (235) months.

☑  The court makes the following recommendations to the Bureau of Prisons:

That the defendant be allowed to serve his term of imprisonment in a medical institution.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____   ☐ a.m.   ☐ p.m.   on _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

ADDENDUM 2

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page   3   of   7

DEFENDANT:   Wally Irizarry-Sisco (1)
CASE NUMBER:   3:15-CR-00391-01(PAD)

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of : ___FIVE (5) YEARS.___

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.   ☑ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

ADDENDUM 3

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page   4   of   7

DEFENDANT: Wally Irizarry-Sisco (1)
CASE NUMBER: 3:15-CR-00391-01(PAD)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   Date _____

ADDENDUM 4

Judgment—Page  5  of  7

DEFENDANT:  Wally Irizarry-Sisco (1)
CASE NUMBER:  3:15-CR-00391-01(PAD)

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this court.

2. The defendant shall not unlawfully possess or use controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4.  The defendant shall submit his person, property, house, vehicle, papers, computers (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic communication or data storage devices, and media, to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

5. The defendant shall not associate with co-defendants; individuals with whom a defendant has previously traded illicit material; a family member or friend under criminal justice supervision for a sex crime; or an identified past victim, unless in a therapeutic setting and with the prior approval of the U.S. Probation Officer. Furthermore, the defendant shall not be a member of any organization that promotes sexual contact between children and adults or any type of depiction thereof.

6. The defendant shall not engage in a specified occupation, business, or profession bearing a reasonable direct relationship to the conduct constituting the offense. Specifically, the defendant shall not work with children under the age of 18, or hold a job that gives him/her authority over potential victims, gives him/her access to vulnerable populations or places him in setting near a school or playground. Any employment must be notified in advance; the Probation Officer will make an assessment of the job placement and set employment restrictions based on the Sex Offender Management Procedures Manual. The defendant shall consent to third party disclosure to any employer or potential employer.

7. The defendant shall not participate in any volunteer activity or be involved in any children's or youth organization or any group that would bring him/her into close contact with a child or children under the age of 18, unless prior approval of the U.S. Probation Officer.

8. The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. Sec. 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state, U.S. Territory or Indian Tribe, sex offender registration agency in which he or she resides, works, is a student, carry on a vacation, or was convicted of a qualifying offense.

9. The defendant shall undergo a sex-offense-specific evaluation and/or participate in a sex offender treatment/and or mental health treatment program arranged by the Probation Officer. The defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s), including submission to testing; such as polygraph, and/or any other testing available at the time of his release. The defendant shall waive his/her right of confidentiality in any records for mental health assessment and treatment, and sign any necessary release form required to obtain the records, imposed as a consequence of this judgment to allow the U.S. Probation Officer to review the defendant's course of treatment and progress with the treatment provider. The defendant shall be required to submit to an initial polygraph examination and subsequent maintenance testing intervals to be determined by the probation office to assist in treatment planning and case monitoring and as a means to ensure that he is in compliance with the requirements of his supervision or treatment program. The defendant will be required to contribute to the costs of services rendered, by means of co-payment, based on his/her ability to pay or availability of third-party payment.

10.  The defendant shall provide the U.S. Probation Officer access to any financial information upon request.

11. The defendant shall cooperate in the collection of a DNA sample as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

ADDENDUM 5

Judgment — Page 6 of 7

DEFENDANT: Wally Irizarry-Sisco (1)
CASE NUMBER: 3:15-CR-00391-01(PAD)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| TOTALS | $ | $ | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ADDENDUM 6

Judgment — Page __7__ of __7__

DEFENDANT:  Wally Irizarry-Sisco (1)
CASE NUMBER:   3:15-CR-00391-01(PAD)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $ __100.00__   due immediately, balance due

         ☐   not later than _____ , or
         ☐   in accordance with  ☐  C,   ☐  D,   ☐  E, or   ☐  F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
     _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
     _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
     term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
     imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:




Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.


☐   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.




☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:


Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

ADDENDUM 7

## Certificate of Compliance with Rule 32

I, Michael C. Bourbeau, hereby certify that the brief herein complies with type volume limitation of F.R.A.P. Rule 32 (a)(7).   The number of words in 14 point Bookman font are 5983  according to the word processing program count.

## Certificate of Service

I, hereby certify that I have caused to be served a copy of the within Opening Brief by electronic mail through the ECF system to AUSA as well as a copy to:

Wally Irizarry-Sisco Reg# 45673-069
FTC Oklahoma City
Federal Transfer Center
P.O. Box 898801
Oklahoma City, Ok  73189

Dated: April 22   , 2020          S/ Michael C. Bourbeau

xx